AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information Associated With the Cellular Device<br>Assigned Call Number (202) 751-0156 that is Stored at<br>Premises Controlled by T-Mobile | )<br>)<br>)<br>)<br>)<br>)     Case No. 19-sc-1637 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1951, 924(c) | Interference with Interstate Commerce by Robbery, Conspiracy to Commit<br>Interference with Interstate Commerce by Robbery, and Possession of a Firearm<br>in Furtherance of a Crime of Violence |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kevin Moore, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: 08/02/2019 _____

_____
*Judge's signature*

City and state: Washington, D.C. _____

G. Michael Harvey, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means    ❒ Original        ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.  19-sc-1637 |
| Information Associated With the Cellular Device | ) |
| Assigned Call Number (202) 751-0156 that is Stored at | ) |
| Premises Controlled by T-Mobile | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ New Jersey _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ August 9, 2019 _____ *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ G. Michael Harvey _____ .
                                                                                                *(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:    08/02/2019 3:00 pm _____        _____
                                                                                                        *Judge's signature*

City and state:   Washington, D.C. _____        G. Michael Harvey, United States Magistrate Judge
                                                                                        *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  19-sc-1637 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number (202) 751-0156 ("SUBJECT PHONE") that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054 ("Provider").

**ATTACHMENT B**

**Particular Things to be Seized**

I.     **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the Government the following information pertaining to the Account for the SUBJECT PHONE listed in Attachment A for the time periods from June 17, 2019, at 00:01 a.m. Eastern Standard Time (EST) to July 3, 2019, at 23:59 p.m. EST:

   a.   The following information about the customers or subscribers of the Account for the SUBJECT PHONE:

   i.    Names (including subscriber names, user names, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.  Local and long distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.    Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the account for the SUBJECT PHONE, including:

   i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

   ii.   information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II.      Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. §§ 1951, 924(c), and identifies the user of the SUBJECT PHONE from June 17, 2019, at 00:01 a.m. EST to July 3, 2019, at 23:59 p.m. EST, including:

1) Any records confirming the identity of the user of the SUBJECT PHONE;

2) Any records that show travel within the District of Columbia;

3) Any records that show meeting locations with potential co-conspirators;

4) Any records that show communication with potential co-conspirators;

5) Any records that show presence at locations of known criminal activity; or

6) Any records that show cell-site movement that tends to contradict statements provided to law enforcement.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## III.     Government Procedures for Warrant Execution

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an

order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (202) 751-0156 THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE | No. 19-sc-1637 |
|---|---|

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Kevin Moore, Special Agent with the Federal Bureau of Investigation, Washington Field Office, Washington, D.C., being duly sworn, depose, and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with cellular telephone number (202) 751-0156 (the "SUBJECT PHONE") that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054, as further described in Attachment A, incorporated herein by reference. The requested search warrant is sought under 18 U.S.C. § 2703(c)(1)(A) and requires T-Mobile to disclose to the Government copies of the information further described in Section I of Attachment B, incorporated herein by reference. Upon receipt of the information described in Section I of Attachment B, Government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      I am "an investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

3.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 2017. I am currently assigned to a squad that investigates violent crime and threats. As a Special Agent with the FBI, I am authorized to investigate violations of the laws of the United States, and I have been involved with numerous criminal investigations involving violations of federal law. I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States. Prior to becoming a Special Agent with the FBI, I was a police officer with the Norfolk Police Department for approximately five and a half years and was a homicide detective for approximately one year. I have received training in general law enforcement and federal investigations. I have participated in the execution of multiple search warrants in which evidence and instrumentalities of criminal activity have been seized.  As part of my duties, I have investigated bank robberies, kidnappings, and other crimes of violence. During these investigations, I have employed a variety of investigative techniques, including the use of cellular phone technology, cellular towers, and the analysis of historical cellular phone records for determining the approximate location from which a phone was used at the particular time or range of times.

4.      This work has included consultation with the FBI's Cellular Analysis Survey Team (CAST). CAST can perform analysis on call detail records for a target phone. The call detail records document the network interaction to and from the target cell phone. Additionally, the records document the cell tower and cell sector ("cell site") which served the cell phone during the period of activity. Used in conjunction, the call detail records and a list of cell site locations can be used to illustrate an approximate location of the target cell phone when it initiated contact with the network. These locations can then be mapped and the cell site data plotted to illustrate the cell site activity over a particular period of time.

2

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents (including members of FBI's CAST), officers of the Metropolitan Police Department (MPD) and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     For the reasons discussed in detail below, I believe that the records described below and in Attachment B (including the historic cell site records) will provide evidence of violations of Interference with Interstate Commerce by Robbery and Conspiracy to Commit Interference with Interstate Commerce by Robbery, both in violation of 18 U.S.C. § 1951 and Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c) (collectively, the "Target Offenses"), including the approximate location of the SUBJECT PHONE in relation to the offenses. Based on the facts set forth in this affidavit, there is probable cause to believe that the TARGET OFFENSES were committed by Gregory Fletcher, the user of the SUBJECT PHONE. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes as further described in Attachment B.

7.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.  Finally, the offenses under investigation are the subject of an open investigation in the District of Columbia.

**PROBABLE CAUSE**

8.      On July 9, 2019, a grand jury for the United States District Court for the District of Columbia returned a two count indictment against Maurice Jones (19-cr-232-EGS) that charged him with one count of Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951 and one count of Possession of a Firearm in Furtherance of a Crime of Violence in violation of 18 U.S.C. § 924(c) in regard to a June 29, 2019 robbery of a commercial business named "Philz Coffee" that is located at 1350 Connecticut Avenue, Northwest, Washington, D.C. At the time the indictment was returned, law enforcement had not yet identified Jones' coconspirator in the aforementioned robbery, which was later determined to be Gregory Fletcher.

9.      On July 30, 2019, a grand jury for the United States District Court for the District of Columbia returned a superseding indictment in criminal case number 19-cr-232 (EGS) that charged Fletcher with the same charges discussed in the initial Indictment above, as well as, a charge of Unlawful Possession of a Firearm by a Person Previously Convicted of a Crime Punishable in Excess of Twelve Months, in violation of 18 U.S.C. § 922(g).

10.     Based on your affiant's investigation, with the assistance of other law enforcement officers with MPD, FBI, and the Prince George's County Police Department (PGPD), and as discussed below, your affiant believes that Jones and Fletcher have been engaged in the commission of multiple robberies, burglaries, and thefts of commercial businesses from at least June 18, 2019 through June 30, 2019 in the District of Columbia and Maryland with the use of a firearm. A summary chart of all the Washington, DC related theft offenses involving either Jones or his coconspirator are detailed below:

| Date and Approximate Time | Commercial Business & Location |
|---|---|
| June 18, 2019, 10:19 p.m. | FareWell Bakery, 406 H Street, NE |
| June 19, 2019, 11:15 a.m. | Fourth Street Market,  6900 4th Street, NW |
| June 24, 2019, 5:15 p.m. | Lincoln Park Cleaners, 1301 East Capitol Street, SE |
| June 25, 2019, 12:20 a.m. | Lola's Barracks Bar and Grill, 711 8th Street, SE |
| June 27, 2019, 2:58 p.m. | Union Kitchen and Grocery, 538 3rd Street, NE |
| June 29, 2019, 7:00 a.m. | Philz Coffee, 1350 Connecticut Avenue, NW |
| June 29, 2019, 7:35 a.m. | Pisco Y Nazca,  1823 L Street, NW |
| June 30, 2019, 6:14 a.m. | Anthem,  901 Wharf Street, SW |

11.     This factual background is not in chronological order of events in the crime spree, but rather, is set forth in a manner to explain the chronology of how law enforcement was able to identify Jones as the individual who participated in the multiple armed robbery related offenses.

12.     On July 1, 2019, at approximately 10:17 a.m., the Anthem, which is located at 901 Wharf Street, Southwest, Washington D.C., reported a theft from their building. After noticing that there was approximately $8,500 to $9,000 of liquor stolen, the security personnel reviewed surveillance video from the location. MPD officers were called to the scene and also reviewed the surveillance video. Officers observed that on June 30, 2019, at approximately 6:14 a.m., two suspects parked a silver four-door sedan on the 900 block of Maine Avenue, Southwest. The suspects crossed the street and entered into Blair Alley. Both suspects entered the Anthem through the trash room located on Blair Alley. The next available surveillance video showed the suspects leaving the area holding boxes containing what appeared to be liquor. The suspects carried the boxes back to the vehicle and left the location in the vehicle. When the vehicle was making a U-Turn, the license plate of the vehicle was clearly displayed on the surveillance footage. That license plate was Maryland tag 9DT6559. The vehicle was registered

to Jones with an address of 12909 Piscataway Road, Clinton, Maryland. Law enforcement officers reviewed police databases and obtained an image of Jones. Jones' physical characteristics, including height, weight, complexion, and build were consistent with one of the suspects who committed a number of recent robbery related offenses. A check through the National Crime Information Center revealed that Jones' vehicle was not reported stolen. Law enforcement officers responded to 12909 Piscataway Road, Clinton, Maryland and observed that Jones' vehicle was sitting in the driveway of the residence. On July 1, 2019, at 8:29 p.m., law enforcement officers observed Jones exit the residence at 12909 Piscataway Road, enter Jones' vehicle, and drive away at which point a stop of Jones' vehicle was conducted. Jones provided law enforcement with a paper document from the Maryland Motor Vehicle Administration, which listed his address as 12909 Piscataway Road.

13.     Jones' vehicle was secured on-scene, photographed, but not searched. Jones' vehicle was subsequently towed to the District of Columbia, delivered to the D.C. Department of Forensic Sciences (DFS), and maintained as evidence until a search warrant could be obtained.

14.     That same evening, July 1, 2019, MPD and PGPD officers executed a search warrant at 12909 Piscataway Road. Jones' wife, who was present at the residence, spoke to law enforcement and was showed a "Be on the Look Out" (a BOLO) that was created in relation to a June 29, 2019 burglary that occurred at a restaurant called "Pisco Y Nazca," which is located at 1823 L Street, Northwest, Washington, D.C. Jones' wife identified Jones as being one of the suspects in the BOLO. In the BOLO, Jones was wearing a blue fedora hat, blue shirt, yellow traffic vest, dark pants, black shoes, and sunglasses. Jones' wife could not identify the other suspect identified in the BOLO, who law enforcement subsequently learned was Fletcher.

15.     During the execution of the search warrant at Jones' residence, law enforcement officers recovered a traffic visibility vest, blue fedora hat, black sneakers, a pair of sunglasses, and a pair of latex gloves.

16.     As it pertains to the burglary, which occurred at approximately 7:35 a.m. on June 29, 2019, Jones and Fletcher were observed inside the restaurant Pisco Y Nazca by a delivery driver who had a key to the restaurant and entered it when it was closed. Both individuals claimed to work at the restaurant and left the location minutes later when confronted by the delivery driver after it spoke to its supervisor.

17.     Upon reviewing the surveillance video, law enforcement officers observed that Jones and Fletcher matched the description of two individuals who committed an armed robbery minutes earlier, at approximately 7:00 a.m., at Philz Coffee, located at 1350 Connecticut Avenue, Northwest, Washington, D.C. The Pisco Y Nazca restaurant is approximately three and a half blocks from Philz Coffee. At that location, witnesses reported that the coffee shop was robbed at gunpoint by two suspects.[1]

18.     Law enforcement observed the surveillance video from Philz Coffee and observed Jones exit the driver's seat of a silver four-door sedan that matched Jones' vehicle and walk into the coffee shop. Jones was wearing the same attire as he was in the BOLO from the restaurant burglary, but without the yellow traffic visibility vest. After a couple of minutes, Fletcher exited

---

[1] In two of the robberies that predated the Philz Coffee robbery, a firearm was discharged with .22 caliber shell casings recovered from both crime scenes (Fourth Street Market and Lincoln Park Cleaners). The shell casings were compared and were found to have been fired from the same firearm. In another robbery that occurred on June 25, 2019 at Lola's Barracks Bar and Grill, an employee who was confronted by Jones and Fletcher, heard both individuals discussing whether to brandish the firearm to the employee. The surveillance video from Lola's Barracks Bar and Grill shows Jones and Fletcher entering into the establishment. The employee was robbed by the men of U.S. currency and property was taken from the establishment.

the front passenger side of Jones' vehicle and walked with a noticeable limp into the coffee shop. Fletcher ordered a bagel and paid for it using cash. During the process of paying for the item, Fletcher displayed a handgun, reached over the counter, and grabbed money from the drawer. Jones was observed standing to the side of the counter before the robbery and when the robbery occurred, he moved towards the front door. In the surveillance video, Fletcher ran to Jones' vehicle and Jones began to drive the vehicle away before Fletcher even got fully inside the vehicle. Approximately $150.00 was taken from the cash register during the armed robbery.

19.     On July 6, 2019, a district court vehicle search warrant, authorized by United States Magistrate Deborah A. Robinson (19-sw-253), was executed on Jones' vehicle. Present inside the vehicle, among other things, was a package addressed to "Pisco Y Nazca," which is the location that was burglarized and which the BOLO was created by which Jones' wife identified the individual depicted therein as Jones. In fact, in that BOLO, Jones is wearing almost the same outfit (minus the reflective vest) from the Philz Coffee robbery that occurred minutes earlier. Also in the vehicle, among other items, were latex gloves, bottles of wine (some of which were confirmed stolen from Pisco Y Nazca), a cellphone, and tools that could be used to commit burglaries.

20.     Fingerprints were subsequently obtained from Jones' vehicle, which matched five individuals to include Jones and Fletcher. Fletcher's fingerprints were found on the exterior front driver's window of Jones' vehicle that was used during the robberies.

21.     Your affiant has also reviewed photographs of Fletcher and he fits the physical build, and possesses the facial features and dimensions of the person who committed the aforementioned robberies and appears to be the individual depicted in the surveillance video from those robberies. Fletcher also has tattoos located in the areas where tattoos were visible on

Fletcher in surveillance video from the robbery related offenses. Victims and witnesses to the robbery reported that one of the perpetrators walked with a distinct limp, which was visible in the review of surveillance video.

22.    On July 30, 2019 and July 31, 2019, surveillance photographs were shown to Fletcher's supervision officer who positively identified Fletcher as the person depicted in the photographs.[2] The supervision officer confirmed that Fletcher has a limp from back problems.

23.    On July 25, 2019, MPD officers made contact with Fletcher in Virginia following his arrest on narcotics possession charges, whereby he invoked his *Miranda* rights in response to an attempt to interview him regarding an investigation into the aforementioned robberies, thefts, and burglaries. Fletcher was observed with a distinct limp by law enforcement personnel attempting to speak to Fletcher.

24.    During the course of this investigation, law enforcement officers identified a phone number for Fletcher (202) 751-0156, which is the SUBJECT PHONE. The SUBJECT PHONE was in Jones' cell phone contacts as "Greg," that was obtained pursuant to a search warrant for Jones' cellphone issued by United States Magistrate G. Michael Harvey (19-sw-258) on July 12, 2019.

25.    The SUBJECT PHONE was also discovered in Fletcher's girlfriend's cellular phone contacts as "Gregg Husband," pursuant to a consent to search obtained on July 29, 2019.

---

[2] On July 29, 2019, your affiant participated in a search warrant at Fletcher's residence in Washington, D.C. and encountered Fletcher's girlfriend Mattie White of over ten years, who was uncooperative with law enforcement. Ms. White could not even positively identify a mugshot of Fletcher and could not identify Fletcher in surveillance photographs from the robberies. Ms. White did, however, provide consent to her cellphone, when it was explained to her that it was going to be seized pursuant to the search warrant for the residence and a search warrant for its contents would have to be obtained.

26.     The SUBJECT PHONE made calls and sent text messages to Jones' phone and received calls and text messages from Jones' phone. Those communications were made on days when robberies were committed.

27.     Accordingly, the Government seeks the records set forth in Attachment B to confirm the location of the SUBJECT PHONE (believed to be used by Fletcher) throughout the course of the robbery related offenses until his arrest (*i.e.*, from June 17, 2019, at 00:01 a.m. EST (the day before the first offense to July 3, 2019 at 23:59 p.m. EST, the date of Jones' arrest). The records requested by the Government are limited to the very short period of time that includes the relevant events in order to determine: (i) the location of the SUBJECT PHONE prior to, during, and immediately following the incidents; and (ii) records of incoming and outgoing calls during the relevant dates to identify individuals who may have information relevant to the commission of the TARGET OFFENSES. These records would also, among other things, identify: (i) meeting locations with potential co-conspirators; (ii) communications with potential co-conspirators; and (iii) Fletcher's presence at locations of known criminal activity.

28.     T-Mobile is the Provider for the SUBJECT PHONE and is in possession of the records described in Attachment B.

29.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the

towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

30.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the presence of the SUBJECT PHONE at the locations where the crimes were committed.

## AUTHORIZATION REQUEST

31.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32.     I further request that the Court direct T-Mobile to disclose to the Government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

_____
Kevin Moore, Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on August 2, 2019.


_____
G. Michael Harvey,
United States Magistrate Judge
For the District of Columbia

12